# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

### NO. 03-13-00621-CV

**Mary F. Henson and Dena Gaetens, Appellants**

**v.**

**Texas Health and Human Services Commission and Chris Traylor[1], M.D.,
Commissioner of the Texas Health and Human Services Commission, Appellees**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 345TH JUDICIAL DISTRICT
### NO. D-1-GN-10-000077, HONORABLE LORA J. LIVINGSTON, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellant Mary F. Henson, by and through her guardian, Dena Gaetens,[2] appeals the judgment of the district court affirming a final order of the Texas Health and Human Services Commission. The Commission's order concluded that Henson became eligible for nursing-facility Medicaid benefits on April 1, 2009. On appeal, Henson contends that the district court erred in affirming the order because, according to Henson, the Commission failed to properly account for certain guardianship orders when it concluded that Henson failed to meet the financial-eligibility requirements for March 2009. We will affirm the judgment of the district court.

---

[1] This suit was originally brought against Kyle Janek, M.D., the former Commissioner of the Texas Health and Human Services Commission. We automatically substitute the name of the successor to this office, Chris Traylor. *See* Tex. R. App. P. 7.2.

[2] Although the administrative proceedings underlying this appeal were initiated by Gaetens on Henson's behalf, Gaetens, individually, is not a party to these proceedings.

## BACKGROUND

The Texas Health and Human Services Commission is the agency designated to administer the Texas Medicaid program. *See* Tex. Hum. Res. Code § 32.021; Tex. Gov't Code § 531.021(a). Chapter 358 of the Texas Administrative Code establishes the Medicaid eligibility requirements for Medicaid funded programs.[3] *See* 1 Tex. Admin. Code § 358.105 (Tex. Health & Human Servs. Comm'n, Description of Eligible Clients). To be eligible for Medicaid benefits a person must demonstrate, among other things, that they meet certain financial-eligibility requirements. *See id*. §§ 358.105, .610(d) (Medicaid Coverage).

On April 17, 2009, Henson, through her guardian, applied for nursing-facility Medicaid benefits. *See id*. §§ 358.600-.623 (Application for Medicaid). At the time of filing, Henson was already a resident in a nursing facility and was paying for her care privately, although she had exhausted almost all of her available assets. Upon reviewing the application, the Commission notified Henson that she was eligible to receive Medicaid benefits effective April 1, 2009. Henson disagreed with the effective date for benefits as determined by the Commission, complaining that the Commission erred in determining that she had failed to meet the financial-eligibility requirements for the month of March 2009. Consequently, Henson sought an administrative hearing, also known as a "Fair Hearing," to contest the decision. *See id*. § 358.720 (Client Right to Appeal).

---

[3] Chapter 358 of the Texas Administrative Code was amended September 2009. *See* 34 Tex. Reg. 5497 (2009) (Tex. Health & Human Servs. Comm'n). The Commission applied the version of Chapter 358 that was in effect when Henson applied for benefits. Unless otherwise indicated, all references to Chapter 358 in this opinion are to rules promulgated by the Commission as they existed at that time.

The hearing officer assigned to Henson's case conducted an evidentiary hearing and issued an order sustaining the Commission's determination of the April 1 effective date. Henson then sought an administrative review of the hearing officer's decision. *See* Tex. Gov't Code § 531.019(c) (requiring administrative review as prerequisite to judicial review of decision related to benefits). Upon reviewing the administrative record, the reviewing attorney determined that "the hearing officer developed the record appropriately, and the record reflects that all policies and procedures were properly applied." Accordingly, the Commission, through the reviewing attorney, affirmed the hearing officer's decision as the Commission's final order. *See id*. § 531.019(e).

Henson filed suit in Travis County district court. After admitting the administrative record, the court concluded that "the Fair Hearing Decision in Case No. 0423309, styled *In the Matter of Mary Frances Henson*, should be affirmed, in all respects." This appeal followed.

**STANDARD OF REVIEW**

Decisions by the Commission related to Medicaid benefits are subject to judicial review under section 2001.174. *Id*. § 531.019(g). Under this standard, a reviewing court must reverse or remand an agency order if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are

(A)     in violation of a constitutional or statutory provision;

(B)     in excess of the agency's statutory authority;

(C)     made through unlawful procedure;

(D)     affected by other error of law;

3

(E)    not reasonably supported by substantial evidence considering the reliable and probative evidence in the record as a whole; or

(F)    arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

*Id*. § 2001.174(2). However, as a reviewing court, we may not substitute our judgment for that of the agency on the weight of the evidence on matters committed to agency discretion. *Id*. § 2001.174(1). An agency order is presumed to be valid, and it is supported by substantial evidence if the evidence in its entirety is sufficient to allow reasonable minds to have reached the conclusions that the agency must have reached to justify the disputed action. *Texas State Bd. of Dental Exam'rs v. Sizemore*, 759 S.W.2d 114, 116 (Tex. 1988).

To the extent our review turns on the interpretation of the Commission's rules, we review these questions de novo. *CenterPoint Energy Houston Elec., LLC v. Public Util. Comm'n*, 408 S.W.3d 910, 916 (Tex. App.—Austin 2013, pet. denied). In interpreting an administrative rule, our primary objective is to ascertain and give effect to the agency's intent. *Id*. If the rule is ambiguous or leaves room for policy determinations, we defer to the agency's interpretation unless the administrative interpretation is plainly erroneous or inconsistent with the regulation or its underlying statutes. *Rodriguez v. Service Lloyds Ins. Co*., 997 S.W.2d 248, 254-55 (Tex. 1999); *CenterPoint*, 408 S.W.3d at 916-17.

**ANALYSIS**

In what is, in effect, one issue on appeal, Henson complains that the Commission erred in determining that she failed to establish her financial eligibility for Medicaid nursing-facility benefits for the month of March 2009.[4]

The Commission determines an applicant's financial eligibility for Medicaid benefits by assessing the person's income and resources and applying federal income and resources eligibility criteria. 1 Tex. Admin. Code § 358.405 (Categories of Resource Limits). An individual meets resources-eligibility criteria if the value of all countable resources does not exceed $2,000. *See* 20 C.F.R. 416.1205 (limitation on resources). A person's value of countable resources is determined as of 12:01 a.m. on the first day of the month for which the person seeks benefits, although eligibility may be re-established no sooner than the first day of the next month. 1 Tex. Admin. Code § 358.400(a), (b) (General Resources).

At the time the Commission reviewed Henson's application, the term "resources" was defined in Chapter 358 as "cash, other liquid assets, or any real or personal property or other nonliquid assets owned by a client, his spouse, or parent, that could be converted to cash." *See id*. § 358.100(103) (Definitions). In addition, resources were considered available to a person even when they were being managed by the person's legal guardian, so long as the guardianship papers did not show that the guardian was prohibited from accessing the resources. *Id*. § 358.415(e), (f)

---

[4] Although Henson also appears to separately argue that her constitutional rights to due process and equal protection have been violated, she fails to explain how her rights have been violated or to provide citations to the record in support of this claim. Accordingly, we conclude that this argument is waived as inadequately briefed. *See* Tex. R. App. P. 38.1(i) (appellant's brief must contain clear and concise argument for contentions made, with appropriate citations to authorities and to record).

(Ownership and Accessibility). A client's bank account, as of 12:01 a.m. on the first day of the month for which eligibility is being tested, was considered a countable resource. *Id*. § 358.435(b)(1) (Liquid Resources). Under Rule 358.435, an applicant's countable resources were reduced by the amount of funds encumbered before 12:01 a.m. on the first day of the month. *Id*. § 358.435(b)(2). The Commission reduced a bank account balance as of 12:01 a.m. on the first day of the month by the amount of any checks written before that time that had not yet been processed by the financial institution. *Id*.

The Commission found that Henson's banking records established that on March 1, 2009, at 12:01 a.m., the balance available to Henson was $2,239.77. Because this balance exceeded the $2,000 eligibility threshold and because there was no evidence of any unprocessed checks at that time, the Commission concluded that Henson failed to demonstrate her financial eligibility for the month of March 2009. The Commission, however, did find that Henson became eligible for benefits effective April 1, 2009.

On appeal, Henson acknowledges that $2,000 is the applicable financial-eligibility limit. In addition, Henson does not dispute that her bank balance was $2,239.77 on March 1 at 12:01 a.m., that there were no outstanding checks that had not yet been processed, and that her guardian was entitled to use the funds in her bank account for her support and maintenance. Instead, Henson argues that the Commission erred in failing to deduct certain guardianship orders as "encumbrances" from this bank balance which, according to Henson, would demonstrate that her countable resources were, in fact, below the $2,000 eligibility threshold.

In support of her argument, Henson asserts that court orders requiring a guardianship to pay a claim are effective the day they are signed and that, under a prior policy decision issued by

the Commission, these types of guardianship orders are considered legal encumbrances against the applicant's estate.[5] Henson contends that, in this case, her guardian was required by the Texas Probate Code to file an application with the probate court requesting a monthly allowance and that the probate court granted that request by issuing its "order setting monthly allowance" in the amount of $2,074.60 per month. *See* Tex. Prob. Code §§ 767-782. Henson also points out that the probate court separately ordered that Henson's guardian pay up to $1,100 for certain expenses, including a wheelchair. Henson reasons that the probate court orders setting the monthly allowance for Henson's needs and authorizing the payment of certain expenses were effective the day they were signed and, thus, operated as encumbrances on her bank account on that same day, regardless of when the money was actually spent.

In response, the Commission emphasizes that Rule 358.345 expressly defines an encumbrance on a bank account to be "the amount of any checks written before that time that have not yet been processed by the financial institution." Further, the Commission argues that, to the extent court orders may, under certain circumstances, operate as encumbrances with respect to calculating an applicant's countable resources, those circumstances are not present in this case.

The Commission made several findings relevant to the guardianship orders that form the basis of Henson's complaint. Specifically, the Commission found:

> (7.)　　Prior to the Medicaid Application, it was necessary for part of [Henson's] monthly expenses to be met using [Henson's] asset reserves. [Henson's]

---

[5] Henson cites to a document entitled Excerpt of Memorandum issued by the Commission and dated May 29, 1996. In the document, the Commission staff concluded, in another case, that a court order to pay a debt was considered a "legal encumbrance at the point in time the court makes the order."

income was $2,052.91 per month. A court order allotting a monthly allowance for expenditures in the amount of $2,074.40 per month from [Henson's] assets was established on November 19, 2008.

(8.)     [Henson's] guardian was limited by the order to spending [Henson's] assets as court appointed guardian to the amount of $2,074.40 monthly. The order required that funds spent be for the care, custody, and maintenance of [Henson].

(9.)     The order allotment was based on approximate monthly expenses of maintaining [Henson] that were presented in a request to the court on behalf of the Guardian. These were anticipated expenses and based on Guardian's own estimates for [Henson's] needs as presented to the court for: nursing home, personal needs, medicare premium, diapers, medical doctors, prescription.

(10.)    The court order does not place specific limits/prohibitions on Guardian for spending allotted funds, nor does it specify spending limits by item. While the monthly allotment was clearly directed based on Guardian's own submission of anticipated need, the only specific restrictions to Guardian's access to [Henson's] assets is that the monthly use may not exceed $2,074.40.

(11.)    The court order allows for expenditure "up to and including the amount of $2,074.40 per month." The court order does not prohibit accumulation of monies in [Henson's] account when the full $2,074.40 is not used in any given month.

(12.)    The court order is for an allowance of expenditure to meet general needs and is not a specific encumbrance to pay specified amounts to limited parties for exact services.

. . .

(16.)    The special one-time court order for January 12, 2009 of $1,100 for a recliner, dresser, wheelchair, and night stand for [Henson] are based on a petition to meet some of [Henson's] special needs made by the Guardian.

(17.)    The special one-time order of January 12, 2009 notes the date of January 2009 on the request and allows the purchases to be made, however, it does not specifically limit the purchase of the items to that month, require the exact amounts noted to be spent, or make an absolute requirement that the items be purchased.

8

The Commission argues that these findings support the Commission's conclusions that the November 19 order and January 12 order "did not prohibit the guardian access to any funds" and that neither order operated as an "encumbrance against the funds in [Henson's] bank account." We agree.

Rule 358.345, regarding encumbrances on bank accounts, by its plain language, permits a reduction of an applicant's account balance with respect to the "amount of any checks written before that time that have not yet been processed by the financial institution." 1 Tex. Admin. Code § 358.435(b)(2). Here, Henson does not contend, nor do the Commission's findings suggest, that Henson's guardian had acted on the probate orders by writing checks that had not yet been processed as of March 1, 2009. In addition, to the extent we may reasonably construe Rule 358.435 as requiring the Commission to treat a court order as an "encumbrance" against a bank account when the order requires the payment of legal debt—as Henson contends we should—there is no evidence that would support the conclusion that the probate orders in this case operated as such encumbrances. That is, the Commission's findings of fact, describing and characterizing the orders at issue, are supported by substantial evidence in the administrative record—namely, the express language of the orders themselves. These findings establish that the November 19 and January 12 probate orders do not operate to restrict Henson's guardian's ability to access any funds and that they are not orders requiring the payment of any specific legal debt.[6] Therefore, assuming without

_____

[6] To the extent Henson suggests that the funds in her bank account are not "resources" at all because the funds are not generally available to her guardian absent permission from the probate court, we disagree. Pursuant to Rule 358.415(e), an applicant's resources in guardianship are generally considered available despite the fact that the guardian may need to routinely "petition the court for permission to dispose of a client's resources." 1 Tex. Admin. Code § 358.410. This is

deciding that Henson's interpretation of the applicable Medicaid rules regarding encumbrances on bank accounts is reasonable and correct, we cannot conclude that the November 19 and January 12 probate orders operate as deductible encumbrances under the Commission's rules. As a result, Henson has failed to demonstrate any error in the Commission's order. Henson's sole issue on appeal is overruled.

## CONCLUSION

Having considered Henson's arguments on appeal, we affirm the judgment of the district court.

_____

Scott K. Field, Justice

Before Justices Puryear, Goodwin, and Field

Affirmed

Filed: November 5, 2015

_____

consistent with guidance provided in the Social Security Administration's Program Operations Manual System (POMS). *Frerks v. Shalala*, 848 F. Supp. 340, 350 (E.D.N.Y. 1994) (noting that POMS is considered persuasive authority, even though it is not published in the Federal Register and does not have "the force of law"). POMS provides that if, under State law, conservatorship funds are available for the care and maintenance of an individual, the funds are considered that individual's resources "despite the fact that the individual or his/her agent is required to petition the court to withdraw funds for the individual's care." *See id*. (citing POMS at SI 01120.010). Thus, under this authority, the funds in Henson's bank account are countable resources, despite the fact that her guardian must petition the court to gain access to the funds. Moreover, there can be no dispute that pursuant to the court's order of November 19, 2008, Henson's guardian had access to at least $2,074.40 per month from Henson's account for the care, custody, and maintenance of Henson. This amount, standing alone, exceeds the $2,000 financial-eligibility threshold.

10